JEANETTE HANIG, BY HER NEXT FRIEND, LOUIS HANIG, AND LOUIS HANIG, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. HENRY B. ORTON, DEFENDANT-RESPONDENT.

Argued October 5, 1937—Decided January 3, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the plaintiffs-appellants, *Estrin & Estrin.*

For the defendant-respondent, *Colie & Schenck (Frederic R. Colie,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J.   Plaintiffs brought suit against defendant to recover damages for an alleged breach of contract to perform an operation upon one Jeanette Hanig, a minor.   Prior to trial the second and fourth counts in the complaint were

struck out and the case went to trial upon the first and third counts only. The third count is for consequential damages allegedly accruing to Louis Hanig, the father of the infant Jeanette Hanig, and the cause of action therein set forth is identical with (excepting the element of damages) that set forth in the first count.

At the conclusion of the plaintiffs' case, the trial judge granted a motion for a nonsuit and from the judgment entered thereon in favor of the defendant the present appeal is taken.

As we shall hereinafter point out the nonsuit was right.

At the trial it appeared, without substantial dispute, that the infant plaintiff, ever since she was three years old had been afflicted with serious trouble of the head, nose and throat, at times threatening to involve her lungs. When she had attained the age of nine years, her physician sent her, with her mother, to Dr. Orton, the defendant, a surgeon specializing in such cases. He examined the child thoroughly and said that "the child had an infected left antrum and that he would have to perform a radical operation—make a hole in the mouth and cut away and remove the diseased tissue. Also, he would have to give five or six bronchoscopy treatments after the operation to clear up the chest." That was in April or June, 1929. The mother desired to postpone the operation in order to try a change of climate. She first took the child to a warmer climate in the west and afterwards to a mountain resort in Pennsylvania. Obtaining no relief for her daughter thereby, she again in May, 1931, turned to the defendant and asked him to operate as he had agreed to do, and at that time his compensation was agreed upon. He then listened to the child's chest and suggested that the operation had better be postponed since he thought she was not in fit condition at that particular time. On June 22d, 1931, after further examination, it was determined to operate. The child was taken to the hospital, the surgeon being instructed "to act on his own best judgment" and the child was operated upon by the defendant for an infected left antrum, as appears from the hospital records, the mother with full knowledge of the

character of the operation giving her written consent. An anaesthesia was administered, the operation began at four-fifteen and closed at four-forty P. M., when the surgeon recognized a condition as "quite dangerous;" in fact she had a crisis of pneumonia, and the surgeon "deemed it inadvisable to continue with the operation" making no attempt to remove the membrane. The child remained in the hospital for five days, after which she was taken home and was examined and treated by the defendant from time to time, usually about twice a weeek, at his office or at the hospital, and from October, 1931, he gave her many bronchoscopy treatments at the hospital until 1933, when the mother discontinued the defendant's treatments and employed other physicians. In 1937 this suit was brought in which the plaintiffs were nonsuited upon the ground, among others, that there was no proof of a breach of the contract upon the part of the defendant.

We think the nonsuit was justified in the cirumstances disclosed by the evidence heretofore and hereafter referred to.

Looking at the evidence, there is no doubt that a radical operation on the left antrum was to be performed, and that such an operation was performed by the defendant is made to appear without substantial dispute.

But the plaintiffs contend that the operation was not performed because the defendant, without right and illegally, refused or neglected to continue it by the removal of the diseased tissue. That contention is unsound. The undisputed proof, put in by the plaintiffs, shows that the surgeon in so acting was within his rights, and performed his duty to his patient, considering that he found in the course of the operation that to continue it would endanger her life.

Where, as here, the duly authorized representative of an infant patient has selected a surgeon to perform an operation under anaesthesia, and has appointed no other person to represent her during the period of unconsciousness, the law will, by implication, constitute the surgeon the representative of his patient and will cast upon him the responsibility of so acting in her interest that she shall receive the full benefit of his professional judgment and skill to which she is

entitled; and this implication, which protects the surgeon while acting within its scope, places no duty upon him to perform an operation that involves risks or results of a kind not contemplated. *Bennan* v. *Parsonnet,* 83 *N. J. L.* 20. In passing upon that case Mr. Justice Garrison said: "The question, however, is one to be settled not by authority but by reason, and its importance is such that it touches at a vital point the interests of the entire public, any member of which may at any time suffer in life or health by the establishment of a rule that will paralyze the judgment of the surgeon and require him to withhold his skill and wisdom at the very juncture when they are most needed, and when, could the patient have been consulted, he would manifestly have insisted upon their being exercised in his behalf."

Here, according to the undisputed proof submitted by the plaintiffs, the surgeon was quoted as saying: "I started to operate, and there was a condition there which I recognized as quite dangerous. She had a crisis of pneumonia * * * and I deemed it inadvisable to continue with the operation."

The plaintiffs contend that the evidence respecting the contract of the surgeon presented a jury question as to the terms of the engagement. We think not. There was no ambiguity in the terms, and the interpretation of such a contract is a question of law for the trial judge and should not be left to the jury. *Mente & Co., Inc.,* v. *Heller,* 99 *N. J. L.* 475; 123 *Atl. Rep.* 755; *Decker* v. *Smith & Co.,* 88 *N. J. L.* 630.

The plaintiffs lastly contend that after discontinuing the operation the defendant was under an obligation to continue it at some future time, both with respect to the removal of the diseased tissue and with respect to the bronchoscopic treatments to clear up the chest.

The answer to that contention is that it ignores the undisputed facts. The proofs show that the defendant properly continued from time to time to treat the child in both respects for a considerable period, until the child was removed from his supervision and treatment by the mother who engaged other doctors to continue such treatment. That this action of the mother was against the wishes of the defendant was

disclosed by the proof (likewise put in by the plaintiffs) that the defendant reported to the mother saying: "I would still like to go on with the work; the work still remains; the left antrum is still infected. I will continue with the operation" and added "since that time the other side has been infected, that is, the right antrum."

Now the rule is that whenever, as here, one party to a contract prevents the other from carrying out the terms thereof, the other party may treat the contract as broken and abandon it. Such an abandonment is merely the acceptance of a situation created by the wrong-doer. *Tanenbaum* v. *Francisco,* 110 *N. J. L.* 599.

The judgment below will be affirmed, with costs.